*In the United States District Court
for the Northern District of Illinois
Eastern Division*

| | |
|---|---|
| Monica Cruz, <br><br> plaintiff, <br><br> – v – <br><br> Primary Staffing Inc., an Illinois corporation, and Lansal, Inc., a Massachusetts corporation, d/b/a Hot Mama's, Hot Mama's Foods, and Hot Mama's Natural Foods, <br><br> defendants. | **10-CV-05653** <br><br> Judge Lefkow <br><br> Magistrate Judge Denlow <br><br> **Jury trial demanded** |

## Response to Motion to Dismiss Count III

## Statement of Facts

### Supervisor Acosta repeatedly sexually assaults Ms. Cruz

In approximately April 2008, as plaintiff Monica Cruz was working on the assembly line at defendant Lansal, Inc., d/b/a Hot Mama's, her supervisor, Ramon Acosta, came up behind Ms. Cruz and pushed himself into her so that she felt his penis, which caused Ms. Cruz to yell and to ask Supervisor Acosta what he was doing.[1]

At this point, Supervisor Acosta had been Ms. Cruz's boss at defendant Hot Mama's for approximately one month, after defendant Primary Staffing had assigned Ms. Cruz to work at defendant Hot Mama's as a machine operator, and Hot Mama's had in turn assigned Acosta to be Ms. Cruz's direct supervisor.[2]

---

[1]   Amended Complaint (doc. #17) at ¶7.

[2]   Id. at ¶4 & ¶5.

Supervisor Acosta's next sexual assault of Ms. Cruz was sometime in the summer of 2008, when he ordered Ms. Cruz to get a product out of the freezer.[3] Ms. Cruz obeyed that order, and Supervisor Acosta then followed Ms. Cruz into the freezer, where he would be alone with her.[4] When Supervisor Acosta was alone with Ms. Cruz in the freezer, Supervisor Acosta grabbed and squeezed Ms. Cruz's rear end, which frightened Ms. Cruz, and she ran out of the freezer and reported what had happened to a co-worker.[5] Ms. Cruz's co-worker told Ms. Cruz that women who had complained of Supervisor Acosta in the past were no longer with Hot Mama's and that Hot Mama's never did anything about Supervisor Acosta's sexual harassment of women employees.[6] And, in fact, Supervisor Acosta had similarly sexually assaulted other female employees at Hot Mama's.[7]

Supervisor Acosta's next sexual assault of Ms. Cruz was in September 2008.[8] Ms. Cruz was working the line, and Supervisor Acosta came up behind her, grabbed her rear end, and pressed himself into Ms. Cruz so that she felt his penis.[9] This greatly upset Ms. Cruz, and she pushed Supervisor Acosta away and told him that she was going to

---

[3] Id. at ¶8.

[4] Id.

[5] Id. at ¶9.

[6] Id. at ¶10.

[7] Id. at ¶16.

[8] Id. at ¶11.

[9] Id.

report him.[10] Supervisor Acosta responded that others had complained about what he did, that nothing ever came of the complaints, and that he would do what he wanted.[11]

**Hot Mama's receives Ms. Cruz complaints and fires her**

Shortly thereafter, one of Hot Mama's managers, Liz "Jackie" Rojas, while in Hot Mama's offices, received from Ms. Cruz a complaint that Supervisor Acosta had sexually assaulted Ms. Cruz three times during her employment with Hot Mama's.[12] A representative of defendant Primary Staffing, Giovanni (the nephew of Primary Staffing's owner), thereupon drove to Hot Mama's where he spoke with Manager Jackie Rojas.[13] After Giovanni spoke with Hot Mama's Manager Rojas, Giovanni told Ms. Cruz that "it would be better" if that day was her last day at Hot Mama's.[14]

**This lawsuit**

Ms. Cruz sued defendants in four Counts:

>Count I – Sexual Harassment
>
>Count II – Title VII Retaliation
>
>Count III – Illinois Gender Violence Act
>
>Count IV– Illinois Common-Law Retaliatory Discharge.

---

[10]   Id. at ¶12.

[11]   Id. at ¶13.

[12]   Id. at ¶14.

[13]   Id. at ¶16.

[14]   Id. at ¶17.

Count III on the Gender Violence Act prays for relief only against defendant Hot Mama's.[15] Defendant Hot Mama's has now moved to dismiss Count III on the Gender Violence Act on the grounds that it did not present a claim of gender violence and is preempted by workers' compensation exclusivity. This Response follows.

**Argument**

I. **Hot Mama's Motion to Dismiss Ms. Cruz's Gender Violence Act claim should be denied because the Amended Complaint pleads facts from which a reasonable jury could infer that Hot Mama's "encourag[ed] or assist[ed]" in the sexual assaults.**

The Illinois Gender Violence Act provides as follows for liability for "encouraging or assisting" gender-related violence:

> §10. Cause of action.
>
> Any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. For purposes of this Section, "perpetrating" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence.

Illinois Gender Violence Act, §10, codified at 740 ILCS 82/10 (emphasis added). By the Statute on Statutes, the word "person" in any Illinois statute includes "bodies politic and corporate as well as individuals". See, Illinois Statute on Statutes, §1.05, codified at 5 ILCS 70/1.05.

In our case, the Amended Complaint pleads that Supervisor Acosta used his supervisory authority to help commit the sexual assaults by, for example, ordering

---

[15] Id. at ¶¶43, 44 and at Count III Prayer for Relief.

Ms. Cruz to go to the freezer, where he could accost her alone and out-of-sight. The Amended Complaint also pleads that Supervisor Acosta had similarly sexually assaulted other female employees at defendant Hot Mama's in the past, that women had complained to defendant Hot Mama's about those sexual assaults, that defendant Hot Mama's did nothing to remedy these sexual assaults, and that women who had complained of Supervisor Acosta's sexual assaults were fired by defendant Hot Mama's. See, Amended Complaint (doc. #17) at ¶¶10, 16. From these facts, a reasonable jury could infer that Hot Mama's "encourag[ed] or assist[ed]" Supervisor's Acosta's sexual assaults. See, e.g., Benitez v. American Standard Circuits, Inc., 2009 WL 742686 at *5 (N.D.Ill., #08 CV 1998, 3/18/2009) (Coar, J.)

Therefore, because Ms. Cruz has pled facts from which a reasonable jury could find that the gender violence against her had been "encourag[ed] or assist[ed]" by Hot Mama's, the Motion to Dismiss Count III should be denied.

**II.      Hot Mama's Motion to Dismiss Ms. Cruz's Gender Violence Act claim on grounds of alleged workers-comp exclusivity should be denied because Ms. Cruz's claims under that Act are both civil-rights violations and intentional torts, neither of which are preempted.**

The Illinois Gender Violence Act defines "gender-related violence" as both a civil-rights violation and as an intentional tort, as follows:

> §5.  Definition.
>
> In this Act, "gender-related violence", <u>which is a form of sex discrimination</u>, means the following:
>
>> (1)      One or more acts of violence or physical aggression <u>satisfying the elements of battery</u> under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in

>       criminal charges, prosecution, or conviction.
>
> (2)    A physical intrusion or physical invasion of a sexual nature under coercive conditions <u>satisfying the elements of battery</u> under the laws of Illinois, whether or not the act or acts resulted in criminal charges, prosecution, or conviction.
>
> (3)    A threat of an act described in item (1) or (2) causing a realistic apprehension that the originator of the threat will commit the act.

Illinois Gender Violence Act, §5, <u>codified at</u> 740 ILCS 82/5 (emphasis added).

Thus, by defining gender violence as "a form of sex discrimination" the Gender Violence Act makes gender violence a civil-rights violation, and civil-rights violations are not preempted by workers-comp exclusivity. <u>See</u>, Illinois Jur., Workers' Compensation §3:24 (2004) ("The exclusivity provisions do not bar civil rights claims.")

In addition, by defining gender violence as "satisfying the elements of battery", the Gender Violence Act makes gender violence an intentional tort, and intentional torts are not preempted by workers-comp exclusivity if the tort was authorized by the employer. <u>See</u>, <u>Senesac v. Employer's Vocational Resources, Inc.</u>, 324 Ill.App.3d 380 at 392, 754 N.E.2d 363 at 373, 257 Ill.Dec. 705 at 715 (1st Dist. 2001) ("plaintiffs' claims here, based on intentional tort, fall outside the scope of the [Workers' Compensation] Act...."), <u>Fredericks v. Liberty Mut. Ins. Co.</u>, 255 Ill.App.3d 1029 at 1031, 627 N.E.2d 782 at 785, 194 Ill.Dec. 445 at 448 (5th Dist. 1994). In our case, the same facts from which a reasonable jury could infer that Hot Mama's "encourag[ed] or assist[ed]" Supervisor's Acosta's sexual assaults also permit that reasonable jury to infer that Hot Mama's

authorized the sexual assaults. See, e.g., Benitez v. American Standard Circuits, Inc., 2009 WL 742686 at *5 (N.D.Ill., #08 CV 1998, 3/18/2009) (Coar, J.)

Therefore, because Ms. Cruz's claim under the Gender Violence Act is both a civil-rights violation and an intentional tort that a reasonable jury could find had been authorized by the employer, Hot Mama's Motion to Dismiss Count III on grounds of alleged workers-comp exclusivity should be denied.

## Conclusion

For these reasons, defendants Motion to Dismiss Count III on the Gender Violence Act should be denied.

                                              Monica Cruz
                                                plaintiff,

                                    By:    s/David L. Lee
                                              Her attorney

**Proof of service**: David L. Lee, an attorney, certifies that this Response was served on defendants attorneys by ECF on February 17, 2011.

                                         s/David L. Lee
                                              David L. Lee


David L. Lee
ARDC #1604422
LAW OFFICES OF DAVID L. LEE
53 W. Jackson Blvd., Suite 505
Chicago, IL 60604
312-347-4400
d-lee@davidleelaw.com